(November 3, 1922.)

STATE, Respondent, v. GEORGE H. WATERMAN, Appellant.

[210 Pac. 208.]

CRIMINAL LAW—CHANGE OF JUDGE—PREJUDICE—SHOWING—INFORMA-
TION—FALSE REPORT—INTENT TO DECEIVE—APPLICATION TO TAKE
DEPOSITION—LETTERS AS EVIDENCE.

1. In order to entitle a party to a change of judge on account of prejudice (Const., art. 1, sec. 18), it must be shown that the judge charged with prejudice is prejudiced against the party litigant, and that such prejudice is of such nature and character as would render it improbable that he could or would give the litigant a fair and impartial trial in the particular case pending.

2. In a prosecution of a bank officer for knowingly making a false report of his bank under the last division of C. S., sec. 5276, it is not necessary to allege in the information that such report was made with the intent to deceive.

3. Held, that admitting in evidence certain letters addressed to appellant is ground for reversal.

4. Held, that the denial of application to take the deposition of Frank W. Waterman under the circumstances shown by the record in this case is ground for reversal.

APPEAL from the District Court of the Tenth Judicial District, for Lewis County. Hon. Wallace N. Scales, Judge.

Appellant was convicted of having made a false report to the Commissioner of Commerce and Industry. *Reversed* and *remanded* for a new trial.

C. H. Potts, Miles S. Johnson and C. D. Livingstone, for Appellant.

"Judges are not prosecuting officers, and ought not to be expected to assume the functions of such. A judge should see that a fair impartial hearing is given the people and the prisoner, and it is entirely inconsistent with his position that he should be the monitor of the prosecuting attorney or identify himself in the least degree with the conduct of the trial on either side of a criminal cause." (*People v. Page,* 1 Ida., at p. 105.)

Criminal laws are enacted primarily to protect society, and by making the report confidential it follows that the penalty for making a false report to the commissioner pursuant to call was to prevent deceit being practiced upon the bank commissioner; hence "the attempt to deceive" is one of the essential ingredients of the crime. (*State v. Givens,* 28 Ida. 263, 152 Pac. 1054.)

"It is a general rule of law that in construing a statute the court should take into consideration the reason of the law; that is, the object and purpose of the same, and the object and contemplation of the legislative body in enacting the same." (*Wood v. Independent School Dist.,* 21 Ida. 734, 124 Pac. 780.)

The defendant was entitled to a fair trial and it was prejudicial error to receive letters in evidence which were entirely irrelevant to the case, particularly so when this evidence was introduced for no other purpose than to excite in the minds of the jurors prejudice against the defendant. (Rapalje, Crim. Proc., sec. 283; 12 Cyc. 434; *People v. Colburn,* 105 Cal. 648, 38 Pac. 1105; *Packer v. United States,*

106 Fed. 906; *State v. Shive,* 58 Kan. 783, 51 Pac. 274; *People v. Lee Dick Lung,* 129 Cal. 491, 62 Pac. 71; *Casey v. Leggett,* 125 Cal. 664, 58 Pac. 264; *Sorenson v. United States,* 168 Fed. 785.)

"There is nothing whatever in the record tending to show that the character of the examination indulged in by the court was necessary. That it had an influence on the minds of the jury prejudicial to the interests of the defendant can readily be conceived from an investigation of the record." (*State v. Crotts,* 22 Wash. 245, 60 Pac. 405; *State v. Givens, supra; State v. Jackson,* 83 Wash. 514, 145 Pac. 470.)

"When a trial judge discredits counsel for the defense in a criminal case, he, to a certain extent, discredits the defense and thus deprives a defendant of a constitutional right." (*State v. Moneymaker,* 100 Wash. 463, 171 Pac. 253; *Murray v. State,* 19 Ariz. 49, 165 Pac. 315; *State v. Taylor,* 7 Ida. 134, 61 Pac. 288; *State ex rel. Warner v. Fullerton, District Judge,* 76 Okl. 35, 183 Pac. 979; *Day v. Day,* 12 Ida. 556, 10 Ann. Cas. 260, 86 Pac. 531.)

Roy L. Black, Attorney General, James L. Boone, Assistant, G. C. Pennell and S. O. Tannahill, for Respondent.

Prejudice of a judge must be evidenced by fact. (*Bell v. Bell,* 18 Ida. 636, 111 Pac. 1074; secs. 6666, 8889, C. S.) The prejudice of the judge must exist as against the defendant as distinguished from the prejudice of the judge against the cause or defense. (*In re Dolbeer's Estate,* 153 Cal. 652, 96 Pac. 266; *Day v. Day,* 12 Ida. 556, 10 Ann. Cas. 260, 86 Pac. 531; 16 C. J. 208, note 89.)

The remarks of a trial judge must be given a reasonable interpretation. (*State v. Ramirez,* 33 Ida. 803, 199 Pac. 376.)

The taking of depositions outside of the state is a matter of discretion for the trial judge. (*State v. Wetter,* 11 Ida. 433, 83 Pac. 341.)

The granting of bail pending appeal is a matter of discretion for the trial judge. (*In re Schriber,* 19 Ida. 531, 114 Pac. 29.)

In determining the question of the motion for change of venue and change of judge, no one is in better position to determine whether there is a prejudice on the part of the trial judge than the trial judge himself. (*State v. Sexton,* 91 Kan. 171, 136 Pac. 901.)

In making a false report under the provisions of sec. 5276, C. S., it is not necessary that the same be made with attempt and intent to deceive the commissioner of finance or any particular person. (C. S., sec. 5276; *State v. Givens,* 28 Ida. 263, 152 Pac. 1054; *State v. Paulson,* 21 Ida. 686, 123 Pac. 588; *State v. Cutts,* 24 Ida. 329, 133 Pac. 115; *State v. O'Neil,* 24 Ida. 582, 135 Pac. 60.)

DUNN, J.—Appellant was tried on an information charging him with making a false bank report to the Commissioner of Commerce and Industry. He was convicted and sentenced to a term in the state penitentiary. The appeal is from the judgment.

Appellant moved for a change of judge on the ground of bias and prejudice of the trial judge as evidenced by his conduct and statements at the time of defendant's entering his plea, April 26, 1922, when the case was set down for trial to begin on the 4th day of May, 1922. This motion was supported by the affidavits of appellant and Miles S. Johnson.

The facts upon which appellant charges bias and prejudice against the trial judge are these: That prior to the filing of the information counsel for appellant was informed by the prosecuting attorney of Lewis county and also by S. O. Tannahill, who was associated with the prosecution, that the case against Leslie L. Roth, assistant cashier of said bank, would be tried before the case against appellant, but that on the morning of the 26th day of April, the prosecuting attorney informed the said Miles S. Johnson "that Honorable Wallace N. Scales, the Judge of the above-entitled Court, had had a conference with himself and Mr. Tannahill the night before and that he had been told by the said Judge that he would not stand for the trial of the case against Roth first

and that both he, the said Prosecuting Attorney, and Mr. Tannahill had presented many reasons why they desired to try the Roth case first, but that the Judge of this court had absolutely and positively refused their request to try the Roth case first and told them that he would try the Waterman case first; that when affiant was so informed he immediately sought out the Judge of this court and had a conference with him and the said Judge confirmed the statements made to affiant by the Prosecuting Attorney; he also stated that he would not permit Roth, the Assistant Cashier, and Dempsey, the Cashier, who were officers under Waterman, to be tried before the defendant Waterman, and many other remarks were made by the said Judge during the course of the said conference with affiant; that in a short time thereafter Court convened and after the defendant entered his plea the Court asked the Prosecuting Attorney about the setting of the cases and the said Prosecuting Attorney requested that the Court set the case of the *State vs. Roth* first and which request was immediately denied and the Court thereupon announced that he would set the case against the defendant Waterman; that during the argument of counsel the Court stated in effect that he would admit that he was prejudiced against trying a clerk or employee first; that affiant endeavored to convince the Court that the defendant Waterman had been misled to his prejudice and that he was not and could not be prepared for trial at this time; that it would be necessary to take depositions of witnesses residing in California, stating the names, the places and the necessity; whereupon the Court replied that he would not permit the defendant to take any depositions whatever outside the State of Idaho.''

The facts set forth as the ground for charging bias and prejudice against the trial judge are not denied. Appellant also relies in this court upon certain acts and statements of the trial judge during the progress of the trial and subsequent thereto to support his charge of bias and prejudice.

While the trial judge, in view of the situation presented by the affidavits supporting the motion for a change of

judge, might with propriety have granted the application for trial before another judge, we are not prepared to say that the denial of said motion was erroneous, in view of the former holding of this court. There is no statute authorizing a change of judge in a criminal case on the ground of bias or prejudice, and counsel for appellant rely upon the constitutional provision of this state that "right and justice shall be administered without sale, denial, delay, or prejudice." (Const., art. 1, sec. 18.) This provision has been held by this court to be self-executing. (*Day v. Day,* 12 Ida. 556, 10 Ann. Cas. 260, 86 Pac. 531.)

In the case of *Bell v. Bell,* 18 Ida. 636, 111 Pac. 1074, this court said: "The prejudice of a judge contemplated by the constitution (art. 1, sec. 18), is a prejudice that is directed against the party litigant, and is of such nature and character as would render it improbable that the presiding judge could or would give the litigant a fair and impartial trial in the particular case pending."

The weight of authority supports this view. 16 C. J., page 208, sec. 311, says: "The prejudice must be against a party personally and not against the cause or defense, and must consist of such settled preconceived opinions, hostile to the party, as will render the judge unable to discharge his functions impartially and must be strong enough to overthrow the presumption of his integrity."

15 R. C. L. 530, sec. 18, says: "The words 'bias' and 'prejudice' as used in the law of the subject under consideration refer to the mental attitude or disposition of the judge towards a party to the litigation, and not to any views that he may entertain regarding the subject matter involved."

On May 4, 1922, appellant made application to the court for a commission to take the deposition of Frank W. Waterman, who resides at Spokane, Washington, notice of intention to apply for said commission having been given to the prosecuting attorney on April 29th. The affidavit of appellant in support of said application said:

"I cannot prove the facts by any other witnesses that I expect to prove by the said witness, Frank W. Waterman;

and that I expect to have him produce, as a witness, all of the original contracts, letters and correspondence that were signed and passed between the Rawson Works Lumber Company and the Bradford-Kennedy Company involving the transactions set forth in the information as a basis for one of the charges against this defendant; also to have said witness produce all of the contracts, letters and correspondence that passed back and forth between the Western States Lumber Company and the Rawson Works Lumber Company and the said witness, Frank W. Waterman, involving the lumber deals and transactions and operations of the said witness, Frank W. Waterman, either as an officer of the Rawson Works Lumber Company or as an individual, with the Bradford-Kennedy Company and the Western States Lumber Company; that as affiant is informed and believes the said Frank W. Waterman has in his possession contracts, documents and papers which will absolutely disprove every allegation of the information in connection with the Rawson Works Lumber Company or with the loan to the said Frank W. Waterman; that the said Frank W. Waterman is the only person that affiant knows of who is not hostile to affiant who has the possession of such documents and that it is not possible for affiant to secure copies of the original documents from any other source; . . . . that the original contracts produced by the said Frank W. Waterman will show and prove that all loans made by the State Bank of Kamiah to the Rawson Works Lumber Company were based upon existing values greatly in excess of the amount of said loans, and that every transaction occurring in connection with a loan to either the Rawson Works Lumber Company or advanced on the faith of drafts drawn by the Rawson Works Lumber Company upon Bradford Kennedy Company were honest, legitimate and *bona fide* loans based upon existing values and in every respect in full accordance with every requirement of the law regulating loans affecting the loaning of money by banks in the State of Idaho.''

This application was by the court denied.

It will be noted that in the affidavit of Miles S. Johnson in support of the application for a change of judge, it is stated that the court on April 26, 1922, said that he would not permit the defendant to take any depositions whatever outside the state of Idaho.

After the close of the state's case the following conversation took place between the court and counsel for appellant:

"The Court: Well, I just wanted to inform you that this would be admitted,—whatever Mr. Tannahill offered to admit, and I don't remember what it was. As far as you said in your affidavit or what the defendant said F. W. Waterman would swear to, I believe the state admitted nothing; and the court felt and now feels that Frank W. Waterman was and is a brother of the defendant; that he lives in Spokane which is just a day's ride from here, and it has been two weeks since the trial started, two weeks tomorrow, and if they had wanted him they could have gotten him.

"Mr. Potts: In that regard we wish to state that we have been trying every day for two weeks to get Frank W. Waterman as a witness and have not been able to secure his attendance, and that the defense did depend on him as a material witness, and notwithstanding diligent effort has been unable to secure his attendance at this trial.

"The Court: It certainly is a very unusual condition, gentlemen, when a man is being tried and his brother lives right close and a man knows he is being tried or is to be tried, that the brother don't come, if they want him.

"Mr. Johnson: The only thing I wish to explain is this, without thinking I am altogether to blame—at the time this matter came up I had a conversation with Mr. Waterman in which he said that he was contemplating a trip. Just where it was I didn't know; I didn't pay any particular attention. I informed him of the understanding that I had with counsel for the State and I said to him that I could see no reason for his figuring that we should interfere. Well, as soon as we found out from the court that this case would be for trial we immediately put in a call for him, and we have

every day since. I got in touch with his attorney, Mr. Cannon, who was in San Francisco and came back, and Mr. Cannon said he would do his best but he himself was unable to locate him.''

If this application to take the deposition of Frank W. Waterman, made at the time it was made, depended entirely upon the affidavit of appellant from which we have quoted at length, we think the court would have committed no error in denying it, for the granting of the application at that time would have necessitated a continuance of the case and the affidavit referred to standing alone would have been insufficient. But the application must be viewed in connection with the fact shown by the record that appellant had been' denied the privilege of going to trial at the time agreed upon between his counsel and the prosecuting attorney and had been compelled to proceed without the presence of the witness Frank W. Waterman, and the further fact that although diligent effort appears to have been made by his counsel appellant was unable to obtain the personal presence of said Frank W. Waterman at the trial.

On this record it must be held that the court committed reversible error in denying appellant's application for a commission to take the deposition of Frank W. Waterman. The fact that Frank W. Waterman was appellant's brother had nothing whatever to do with the merits of the application. It appears from the record that counsel for appellant were diligent in their efforts to have him personally present at the trial as a witness, but owing to a misunderstanding, for which appellant was not responsible, as to the time at which the case would be tried, were unable to obtain him. This witness appears to have been the person through whom the transactions, or at least many of them, between the Rawson Works Lumber Company and the Bradford-Kennedy Company took place, and it would seem from the record that he might have been able to give very important testimony to be considered by the jury in behalf of appellant.

Appellant complains of the repeated statements made by the trial judge during the impaneling of the jury and also

in his instructions to the jury to the effect that the allegation of the information that the false report was made "with the attempt and intent to deceive the said Commissioner of Commerce and Industry of the State of Idaho is not material and need not be proven by the state." This matter might have been disposed of effectually without so much discussion and controversy as appears in the record, but it does not seem that it worked any injustice to appellant. The part of the information covering this point reads as follows: "That the said false report was wilfully, knowingly, falsely, fraudulently and feloniously made and subscribed to by the said George H. Waterman, as an officer, to wit: President of the said State Bank of Kamiah, with the attempt and intent to deceive the said Commissioner of Commerce and Industry."

Appellant relies upon the case of *State v. Givens*, 28 Ida. 263, 152 Pac. 1054, to support his contention that the attempt and intent to deceive the commissioner is an essential allegation in the information in this case.

The offense charged in the Givens case was that of "wilfully, unlawfully, knowingly, feloniously and fraudulently making a false report of the affairs, financial condition and property of the bank of Nampa, . . . . each and every of which said false statements so contained in said report . . . . being intended . . . . . to deceive the said state Bank Commissioner." This is substantially identical with the charge made against appellant in this case. In each of these cases the prosecution was instituted under C. S., sec. 5276, which reads as follows:

"Any banker, officer, director or employee of any bank or trust company who shall wilfully and knowingly subscribe to, or make or cause to be made, any false statement or false entry on the books of any bank or trust company, or shall knowingly do or exhibit false papers, with the attempt to deceive any person or persons authorized to examine into the affairs of any such bank or trust company, or shall knowingly make, state or publish any false report or state-

ment of any bank or trust company, shall be deemed guilty of a felony.''

Even if the information in the Givens case did contain the allegation that the offense was committed with the intent to deceive the bank commissioner, that did not necessarily establish the contention that this clause is essential to the information, and that case does not so hold. In fact, it does not pretend to pass upon this point. The first division of C. S., sec. 5276, makes it a felony for a banker, officer, director or employee of any bank or trust company to wilfully and knowingly make a false statement or false entry on the books of such bank or trust company with the attempt to deceive any person or persons authorized to examine into the affairs of any such bank or trust company. The second division of said section makes it a felony for any banker, officer, director or employee to knowingly do or exhibit false papers with the attempt to deceive any person or persons authorized to examine into the affairs of any such bank or trust company. In other words, the clause, ''with the attempt to deceive any person or persons authorized to examine into the affairs of such bank or trust company,'' is an essential element in every offense mentioned in that part of the section preceding this clause. The third division of said section makes it a felony for ''any banker, officer, director or employee of any bank or trust company to knowingly make, state or publish any false report or statement of any bank or trust company.''

It will be observed that the clause, ''with the attempt to deceive any person or persons authorized to examine into the affairs of any such bank or trust company,'' is not used in connection with and does not apply to the third division of said section, which is the only part of said section that has reference to the making of such a false report or statement of any bank or trust company as is involved in this prosecution. Knowingly making such a false report must have appeared to the legislature as sufficient to constitute a felony, and we have no right to read into this part of the section a specific intent not necessary to the offense and clearly not

intended by the legislature to be included. There was no error in the ruling of the court on this point.

The trial court admitted in evidence on behalf of the state exhibits 549 to 554, both inclusive, which are carbon copies of letters written by the cashier of the State Bank of Kamiah to appellant and addressed to him in care of the Farmers' National Bank at Pomeroy, Washington. These copies were found by the state bank commissioner in the State Bank of Kamiah at the time of taking charge of said bank. They bear dates running from October 16, 1919, to December 2, 1919, and the report charged to be false in this case was made on May 14, 1920, purporting to show the condition of the bank on May 4, 1920. From examination of these exhibits we fail to see any matter that can be considered as legitimately bearing upon the issue before the court and jury in this case, namely, whether appellant on May 14, 1920, made a report to the state bank commissioner which he knew to be false in the particulars charged in the information. There are some matters in these exhibits that might have been admissible in evidence against appellant if they could have been shown to exist on or about May 4, 1920, the date on which the report purported to give the condition of the bank, but the latest of these exhibits was dated December 2, 1919, five and one-half months before May 4, 1920, and the facts shown by these letters could not help the jury to determine whether the report of the condition of the bank on May 4, 1920, was false or not. There seems to be serious question whether such letters were properly identified, in addition to the objection already discussed, but in view of the conclusion reached it is not necessary to go into this matter or into other objections that were urged against these exhibits.

A letter written by appellant under date of May 22, 1920, was offered in evidence and admitted over the objection of appellant. This letter was inadmissible for the same reason that we held the copies inadmissible. Both this letter and the copies referred to contained matters which were not only

immaterial, but which must have been highly prejudicial to appellant.

Appellant complains of the refusal of the court to admit in evidence his exhibit ''U,'' which was a copy of a contract between the Rawson Works Lumber Company and the Bradford-Kennedy Company. This contract, it is claimed, was the foundation of appellant's defense so far as the question of loans to Frank W. Waterman is concerned. It must be borne in mind that the information charged the report made by appellant to have been false in two particulars, the first of which, and the only one involved in this appeal, is set out as follows:

''That said report purported to show that no person, firm, or corporation was then indebted to said bank in excess of the limit fixed by statute, and that said report was therein false in that at least one person, to wit: F. W. Waterman, was then and there indebted to said bank in excess of such statutory limitation and in direct violation thereof and in amounts not specified therein.''

Just how this contract marked defendant's exhibit ''U'' would be admissible as bearing upon advances or loans made to Frank W. Waterman personally we are unable to say from the limited record that has been brought here in the bill of exceptions. From this record it would seem that this exhibit was offered in explanation of certain advances made to the Rawson Works Lumber Company, but if so, it does not appear how such advance had any bearing upon the obligations of Frank W. Waterman personally. If the purpose of introducing this exhibit was to lay the foundation for the showing that certain drafts of the Rawson Works Lumber Company against the Bradford-Kennedy Company ''were bills of exchange drawn in good faith against actual existing values,'' then we are inclined to the view that exhibit ''U'' should have been admitted, provided such transactions had legitimate connection with the loans to Frank W. Waterman.

Instructions numbered 3, 4, 5, 6 and 7 offered by appellant were refused by the trial court, but we find no error in this as to any one of said instructions.

Appellant complains of the refusal of the trial court to admit him to bail pending this appeal. In cases of this character the admission of defendant to bail after conviction is a matter of discretion with the trial court. (C. S., sec. 9096; *In re Schriber*, 19 Ida. 531, 114 Pac. 29, 37 L. R. A., N. S., 693.) Unless there is good reason for refusing bail, a defendant sentenced to imprisonment ought not to be compelled to submit to imprisonment while he is prosecuting an appeal in good faith. In this case the record does not show for what reason the court refused to admit appellant to bail, and on the record as it is presented here we are unable to hold that such refusal was an abuse of discretion.

The other errors assigned by counsel for appellant require no special discussion. For the errors above enumerated the judgment of the trial court must be reversed and a new trial granted. It is so ordered.

Rice, C. J., and McCarthy and Lee, JJ., concur.